UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALEETA POWE,                                                      Plaintiff

v.                                                Civil Action No. 3:24-cv-220

UNIVERSITY OF LOUISVILLE                                         Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

Defendant University of Louisville ("Louisville") moves for summary judgment on Plaintiff Aleeta Powe's ("Powe") claims. [DE 33]. Powe responded [DE 39], and Louisville replied [DE 40]. Powe also filed an unopposed motion for leave to file excess pages. [DE 38]. These matters are ripe. For the reasons below, the Court **GRANTS** Powe's motion to file excess pages [DE 38] and **GRANTS IN PART and DENIES IN PART** Louisville's Motion for Summary Judgment. [DE 33].

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In August 2005, Powe began working for Louisville as an assistant professor in the Chemistry Department. [DE 33-1, Dep. of Powe, at 245]. During her time at Louisville, Powe was considered a "term faculty" member. [*Id.*]. Powe worked for Louisville in this position until her mother suffered a stroke in 2025, and Powe retired prior to the start of the 2025 Spring Semester. [*Id.* at 285]. During Powe's time at Louisville, she was the only Black faculty member in the Chemistry Department. [DE 39-2, Dep. of Powe, at 477].

In 2015, the Chemistry Department revised its personnel policies to provide term faculty members with full voting rights, including the right to participate in elections for Department Chair, which were subsequently adopted by the Dean of the College of Arts and Sciences ("A&S").

1

[DE 39-7, April 28, 2021, email communication regarding 2015 policy change, at 561]. The change was confirmed by a 17-0 vote. [*Id.*]. Prior to this revision, the Chemistry Department did not permit term faculty members to vote or participate in elections. [*Id*].

To select a Chemistry Department Chair a candidate must first be nominated. [DE 39-5, Dep. of Interim Dean David Owen ("Owen"), at 505]. Second, the faculty votes as to a whether a potential department chair candidate is "acceptable." [*Id.*]. Third, if deemed acceptable by faculty vote, the candidate is presented to the University Provost and Board of Trustees. [*Id.*]. A candidate must complete all steps to be appointed as Department Chair. [*Id.*].

In June 2022, former Chemistry Department Chair, Professor Craig Grapperhaus ("Grapperhaus"), approached Powe and asked if she would serve as Department Chair if she was nominated, to which Powe agreed. [DE 33-2, Dep. of Grapperhaus, at 289]. Professor Richard Baldwin ("Baldwin"), a tenured faculty member, was also nominated. [*Id.* at 292]. Baldwin is a white male. [*Id.*]. Both individuals met with Louisville's Interim Dean, Owen. [DE 39-25, Louisville Interrogatory Responses, at 696]. After meeting with both individuals, Owen recommended Powe as the candidate. [DE 33-1 at 258]. The Department faculty then voted to approve Powe. [*Id.*]. On August 19, 2022, Powe received a plurality of the votes to become the next Department Chair. [*Id.*]. Powe received votes from both tenure and term faculty members. [*Id.* at 260].

Before her approval by the Provost and Board of Trustees and appointment as Department Chair, Baldwin discovered that the 2015 voting policy change of the Chemistry Department was inconsistent with A&S by-laws, and thus the selection process should be invalid. [DE 39-5 at 511-12]. After discussing the issue with a group of tenured faculty members, the issue was raised to Louisville's Deans. [*Id.*]. Baldwin chose this group of professors because he believed they "may

be questioning the current process" and wanted to get the issue settled "soon." [DE 39-4, August 22, 2022, email communications, at 490]. Baldwin noted that he didn't think he should be the one to "pursue this directly for obvious reasons." [*Id.* at 491].

Baldwin alleged that according to the by-laws, "Term" faculty members are ineligible to vote on personnel matters within their department, such as voting for a Department Chair. [*Id.*]. Therefore, the 2015 Chemistry Department policy violated the A&S by-laws and was invalid. Although the voting practice has been occurring since 2015, no other issues were raised by Baldwin, or anyone else, prior to Powe's 2022 nomination. [DE 39-3, Declaration of Professor Lenore Hoyt ("Hoyt"), at 487-88].

After being alerted to this news, a group of Louisville administrators determined that the vote violated the A&S by-laws. [DE 33-5, Dep. of Owen, at 312]. On August 31, 2022, the Louisville administrators determined that the process to nominate a new Department Chair must start over to comply with the requisite guidelines and the Louisville Redbook.[1] [*Id.*]. The administrators involved in this decision included Owen, Louisville's Associate Dean for Faculty Affairs Susan Ryan ("Ryan"), Louisville's Associate University Counsel Brigid Gies ("Gies"), Chair of the Chemistry Personnel Committee Muriel Maurer ("Maurer"), and outgoing Chemistry Department Chair Frank Zamborini ("Zamborini"). [DE 33-8, August 31, 2022, email chain regarding next steps for Chemistry Department chair, at 326]. Baldwin did not participate in this decision to restart the vote. [*Id.*]. Zamborini, however, was part of the initial group of faculty members that Baldwin had reached out to when he discovered the potential 2015 voting policy issue. [DE 39-4 at 490]. After the Louisville administrators ordered a revote, Powe decided not to run again. [DE 39-2 at 439]. Baldwin, however, was nominated. [*Id.*]. In the ensuing revote and

---

[1] When the Redbook and the University by-laws are in conflict, the Redbook controls. [DE 39-5 at 505].

nomination process, Baldwin was appointed by Interim Dean Owen, won a majority vote of acceptability, and was approved by the University Provost and Board of Trustees. [*Id.*].

Two months later, on November 3, 2022, Baldwin resigned as Department Chair, but remained at Louisville as a faculty member. [DE 39-20, resignation of Baldwin, at 666-67]. Baldwin claimed irreconcilable differences with Louisville administrators. [*Id.*]. Thus, the Chemistry Department had to initiate the Department Chair nomination process once again. [*Id.*].

Powe spoke with Owen and tenured professor Fred Luzzio ("Luzzio") about running for the now vacant position. [DE 39-2 at 430]. Subsequently, Luzzio nominated Powe. [*Id.*]. After Powe was announced as a candidate, and two weeks after the deadline to submit nominations, Professor Richard Wittebort ("Wittebort") was also nominated. [DE 39-2 at 457]. On November 28, 2022, Wittebort was announced as receiving the necessary "acceptable" votes while Powe had not. [*Id.* at 459-60]. Wittebort was then approved by Owen, the Provost, the Board of Trustees and was appointed as Department Chair. [*Id.*].

On February 23, 2023, Powe submitted a university faculty grievance (the "Grievance") against Baldwin and Owen. [DE 39-23, Grievance Panel Report, at 681-82]. The Grievance asserted that Baldwin was responsible for preventing her from becoming Department Chair and his actions were motivated by race and gender. [*Id.*]. The Grievance demanded: (1) Baldwin be relieved of his faculty position; (2) Baldwin be officially and publicly reprimanded; (3) leadership training for Powe's benefit at Owen's expense; and (4) Powe be appointed as Department Chair. [*Id.*]. The Grievance Panel (the "Panel") held a two day hearing on August 14 and 15, 2023. [*Id.*]. And on August 28, 2023, the Panel submitted its report. [*Id.*]. The Panel recommended to reprimand Baldwin, develop leadership opportunities for Powe, and appoint Powe as Department Chair and review for tenure after one or two years. [*Id.*].

On September 20, 2023, Powe filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission. ("EEOC"). [DE 39-24, EEOC Charge, at 687]. In September or November 2023, Dean Dayna R. Touron ("Touron"), who replaced Own after he stepped down as Dean, agreed with all recommendations *except* for the recommendation to install Powe as Department Chair or to review her for tenure. Touron stated:

> I respectfully do not agree that Powe should be appointed as department chair or should be reviewed for tenure. Although it may be the case that term faculty have been appointed as department chair in other schools or colleges at the University of Louisville, it would be a highly unusual practice in a College of Arts & Sciences, particularly at the R1 level. Review for tenure must conform to university policy and practices.

[DE 33-4, Dep. of Touron, at 309]. It is a disputed fact whether Touron had notice of the Charge prior to her response to the Panel's recommendations. [DE 39 at 366; DE 40 at 729]. Touron's response is undated, and she could not recall when it was issued. [DE 33-4 at 309]. Powe alleges that if Touron's response came before September 20, 2023, and she would have included Touron's response in the Charge. [DE 39 at 366].

In December 2023, Powe became aware that a former student had submitted a complaint against her relating to the student's grades. [DE 39-2 at 463]. This was the first student complaint Powe had received since she arrived at Louisville. [*Id.*]. Relatedly, Baldwin serves as a mediator in the student complaint process. [DE 39-11, 2023 email chain communication between Baldwin & student, at 596]. Baldwin's role as a mediator is to "get the complaint made clear" and to get the "student and instructor together." [*Id.*]. Instead, Baldwin gave the student advice on how to present her case, specifically, to mention certain facts that could be "important" in a final decision. [*Id.*]. The student's grievance was heard by the Student Complaints Committee (the "SCC"). [DE 39 at 371]. After the hearing, the SCC found the complaint meritless and sided with Powe. [DE 39-2 at 472]. However, Touron went against the SCC's findings and overturned their

recommendation. [*Id.*]. Touron demanded that Powe not only recalculate the individual student's grade, but required Powe to recalculate all 120 of her student's grades. [*Id.*].

In March 2024, Grapperhaus met with Powe to discuss her students "DFW"[2] rates and student evaluations. [DE 39-2 at 472]. Allegedly, per Touron's instructions, Grapperhaus suggested that Powe teach a different chemistry course in an effort to improve her DFW rates and overall evaluations. [*Id.*]. Grapperhaus stated Touron was "stressing" DFW rates and had been "going after faculty to decrease the DFW rates." [*Id.* 476]. Although Powe did not agree that her evaluations and DFW rates would improve if she taught a new course, Powe was nonetheless reassigned and began teaching the elective "Chemistry in Society" starting in the Fall of 2024. [*Id.*]. This is the first time since 2011 that Powe had been assigned to teach a lower-level class. Powe viewed the reassignment as a demotion, as Touron had "taken away" her previous chemistry class. [*Id.* at 462-63].

In December 2024, Powe's mother suffered a stroke. [DE 33-1 at 284]. Powe retired shortly thereafter to take care of her mother and has not obtained employment elsewhere.

Powe previously filed a second amended complaint. [DE 13]. The Second Amended Complaint removed both sex discrimination claims and her retaliation claim pursuant to Title VII. [DE 13 at 87]. In the Court's previous Memorandum and Opinion, the Court held that Powe had failed to exhaust her administrative remedies for her Title VII Race Discrimination Claim. *Powe v. Univ. of Louisville,* 2024 WL 4804073, *3-*4 (W.D. Ky. Nov. 15, 2024). The Court permitted Powe's other claims, race discrimination and retaliation in violation of the Kentucky Civil Rights

---

[2] DFW rates in education measure students' failure or withdrawal rates in different courses. [DE 33-1 at 268].

Act ("KCRA"), to move forward. [*Id.*]. Louisville moves for summary judgment on both outstanding claims.[3] [DE 33 at 231].

## II.    MOTION FOR SUMMARY JUDGMENT

Powe's complaint alleges that Louisville discriminated against her based on her race and retaliated against her for engaging in protected activities in violation of the KCRA. Louisville maintains that all of Powe's claims fail as a matter of law. [DE 33].

### A.  Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Both parties must support their assertions "that a fact cannot be or is genuinely disputed"

---

[3] Louisville also moves for summary judgment on Powe's Title VII claim for race discrimination. [DE 33 at 232]. But as stated, the Court dismissed this claim in its previous Order. *Powe,* 2024 WL 4804073, at *3-*4.

by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). The nonmovant must does so by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

B. Race Discrimination

Powe claims that Louisville discriminated against her based on her race because her appointment to the Department Chair was "revoked based on pretextual reasons." [DE 21-1 at 175]. Powe's complaint asserts that this action violated provisions in both the KCRA and Title VII[4] prohibiting employers from discriminating on the basis of race. [*Id.*].

---

[4] The Court previously dismissed Powe's Title VII claim. *Powe,* 2024 WL 4804073, at *3-*4.

Because "the general purpose of the [KCRA] is to provide a means for implementing within the state the policies embodied in Title VII," federal courts look to federal law under Title VII in assessing claims brought under the KCRA. *Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 808 (W.D. Ky. 2014), *aff'd*, 597 F. App'x 858 (6th Cir. 2015) (alteration in original) (quoting *Stanley v. Cent. Kentucky Cmty. Action Council, Inc.*, No. 3:11-CV-552, 2013 WL 3280264, at *5 (W.D. Ky. June 27, 2013)).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a claim of sex discrimination under Title VII, a plaintiff may introduce either direct evidence or circumstantial evidence that supports an inference of discrimination. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). "Direct evidence is evidence that 'requires no inferences or circumstantial evidence to create an inference of discrimination.'" *Hunter v. Gen. Motors LLC*, 807 F. App'x 540, 543 (6th Cir. 2020) (quoting *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018)); *see also Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003) ("Direct evidence is evidence, which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." (quoting *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001))). Circumstantial evidence, on the other hand, "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Ondricko v. MGM Grand Detroit*, LLC, 689 F.3d 642, 649 (6th Cir. 2012) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). Powe does not contend, or offer any evidence, to prove her claim through direct evidence of discrimination. Thus, the Court only will examine her claim through circumstantial evidence.

9

When a claim is based solely on circumstantial evidence of discrimination, courts must apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973); *Laster*, 746 F.3d at 726. Under *McDonnell Douglass*, a plaintiff must first establish a *prima facie* case of discrimination. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014). To do so, she must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007). Once a plaintiff establishes her *prima facie* case, the burden "shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions[.]" *Shazor*, 744 F.3d at 957 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (emphasis in original).

### i.     *Prima Facie Case*

Louisville argues that Powe cannot make out a *prima facie* case of sex discrimination because she cannot demonstrate that she suffered an "adverse employment action." [DE 33 at 233-24]. Louisville states that Powe's alleged adverse employment action, Louisville's revocation of her appointment as Department Chair, cannot be an adverse employment action because "she was never actually appointed as Department Chair." [*Id.*]. Powe states that the decision to revoke her appointment caused a significant change in benefits and thus qualifies as an adverse employment

decision. [DE 39 at 374]. In response to Louisville's allegation that Powe was never appointed as Department Chair, Powe states that she was "effectively appointed" to the position. [*Id.*].

As discussed, there are three steps to becoming Department Chair. The individual must be nominated, properly voted as "acceptable," and ultimately approved by the University Provost and Board of Trustees. [DE 33 at 234]. Neither party contests that all three steps *did not* occur. [*Id; DE 39 at 374*]. As to step three, Powe contends because she won the initial vote, "one could assume that the Board and Provost would approve" her appointment. [DE 39 at 374]. Louisville states that any contention that the Provost and Board of Trustees would approve her is "speculative and cannot support the adverse-action component of the discrimination claim." [DE 33 at 234]. Louisville also argues that Powe only received a plurality of the vote, not a majority, as is required by the Redbook. [DE 40 at 718].

In *Patterson v. Kent State Univ.,* 155 F.4th 635, 646 (6th Cir. 2025), Patterson alleged that Kent State awarded Patterson a "prestigious leadership position" only to "revoke" it shortly thereafter. *Id.* at n.6. Although the Sixth Circuit did not ultimately determine whether the revocation constituted an "adverse employment action," and instead decided the matter on pretext,[5] the Sixth Circuit stated that this argument "probably" does not qualify because Patterson was not appointed to the position. *Id.* In *Mitchell v. Vanderbilt Univ.,* 389 F.3d 177, 182-183 (6th Cir. 2004) the Sixth Circuit held that Mitchell, a tenured faculty member who faced a potential reassignment, never suffered an adverse employment action because "the proposed actions [to reassign Mitchell] were never implemented."

Accordingly, Powe did not suffer an adverse employment decision when her appointment was allegedly revoked, because it is undisputed that she never satisfied all three steps to becoming

---

[5] The Sixth Circuit stated that "because Patterson's claim fails at the pretext stage, we assume without deciding that the claim passes the *prima facie* stage." *Patterson,* 155 F.4th at 646.

the Department Chair. [DE 33-1 at 261 (when asked if Powe was approved by the Board and provost to be the Department Chair of the Chemistry Department, Powe replied "No")]. And further, Powe did not receive a *majority* of the votes necessary for her vote to be in accordance with the Redbook, which is Louisville's ultimate governing document.[6] The Redbook states:

> The departmental faculty may vote on the candidate tentatively selected by the dean. When the dean and a <u>majority of the departmental faculty</u> concur on a candidate, the dean may recommend that person via the Executive Vice President and University Provost for approval by the President and Board of Trustees

Redbook 3.3.5(B)(1) (emphasis added). Powe only received a plurality. [DE 39-2, vote of Powe, at 484]. Because of this, Powe did not have her position as Department Chair revoked. That is, Powe's appointment was never formally "implemented" by Louisville; either because she did not receive the approval from the Provost and the Board of Trustees, or by not receiving a majority vote. *Mitchell,* 389 F.3d at 182; *Steward v. Esper,* 815 F. App'x 8, 19 (6th Cir. 2020) (holding that the acceptance of an offer, which was "withdrawn the following day" was not a proper basis for an adverse employment action when properly withdrawn).

In other words, Powe was not "effectively appointed" as she claims because she was not appointed at all. *See Wilson v. City of Des Moines,* 338 F. Supp. 2d 1008, 1032 (S.D. Iowa 2004) (holding that Wilson failed to meet her *prima facie* claim of discrimination because "the record indicates Wilson was not eligible" for an award, and thus, "revocation" was proper and not an adverse employment action). And although Powe argues that it was a "mere formality" for the Board of Trustees to approve the winner of the vote of the Department, this all but concedes that Powe never satisfied the final prerequisite to becoming Department Chair. [DE 39 at 368]. Thus, because Powe did not satisfy all three steps necessary to become the Department Chair, the "revocation" of her appointment was proper and she did not suffer an adverse employment action.

---

[6] When the Redbook and Louisville by-laws are in conflict, the Redbook controls. [DE 39-5 at 505].

12

[DE 33-1 at 261]; *Jones v. City of Cortland Police Dep't,* 448 F.3d 369, 371 (6th Cir. 2006) (holding that because the plaintiff was not eligible for the position, the *prima* facie claim of discrimination fails).

For the reasons above, Powe did not suffer an adverse employment action, and her *prima facie* case fails. *Jones,* 448 F.3d at 371 (holding that the plaintiff must meet all elements of the *prima facie* claim).

### ii.      Nondiscriminatory Justification

If Powe was able to satisfy all elements of a *prima facie* claim, Louisville has articulated a legitimate, nondiscriminatory explanation for its actions. Louisville contends that following the proper by-laws, Redbook, and other official Louisville guidelines is a proper and legitimate non-discriminatory reason. [DE 33 at 234-235]. Louisville does not need to persuade the trier of fact they were actually motivated by the proffered reasons at this stage, but need only to produce a reason. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). An employer's execution of their own policy, and specifically a university's by-laws, constitutes a legitimate, non-discriminatory reason. *Kubik v. Central Mich. Univ. Bd. of Trustees,* 221 F. Supp. 3d, 885, 912 (E.D. Mich. 2016); *Chattman*, 686 F.3d at 349; *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009). Therefore, Louisville's has proffered a viable nondiscriminatory reason and has met its burden at this stage. *See Chattman*, 686 F.3d at 349 ("[Defendant's] burden is merely one of production, not persuasion.").

### iii.     Pretext

Still assuming that Powe had met her initial burden, and now Louisville has articulated a nondiscriminatory justification for its action, the burden would shift back to Powe to show by a preponderance of the evidence that Louisville's justification is pretext for unlawful discrimination.

13

*Hicks*, 509 U.S. at 515. Powe may establish pretext by showing that the proffered reason "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Under the first method, which "is essentially an attack on the credibility of the employer's proffered reason," the plaintiff must show that "the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual." *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006). "Where the employer can demonstrate an honest belief in its proffered reason, however, the inference of pretext is not warranted." *Id.* Under this "honest belief" rule, an employer's proffered reason is considered honestly held when the employer can establish that it "reasonabl[y] reli[ed] on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). The second method is also an attack on the credibility of the proffered reason, but unlike the first method, "admits that the employer's proffered reason has basis in fact but denies that it created sufficient cause for the adverse employment action." *Joostberns*, 166 F. App'x at 791. The third method "admits that the reason could motivate the employer but argues that the illegal reason is more likely than the proffered reason to have motivated the employer." *Id.* "[R]egardless of which rebuttal method a plaintiff uses, '[s]he always bears the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against [her].'" *Gunn v. Senior Servs. of N. Kentucky*, 632 F. App'x 839, 844 (6th Cir. 2015) (quoting *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012)).

14

Powe cannot demonstrate that Louisville's reasoning was motivated by pretext. After the relevant administrators decided a revote was warranted to comply with Louisville's by-laws and Redbook, Powe confirmed that she was still eligible to be nominated, participate in the vote, and try to win a majority vote. [DE 33-1 at 262]. Yet Powe chose not to run again and was not nominated by anyone else. [*Id.*]. In *Patterson,* Patterson claimed Kent State University discriminated against her on the basis of trans-gender status based on her attempt to transfer her tenure status. 155 F.4th at 647. After recognizing that Patterson's initial vote "hadn't followed the right procedures," Kent State ordered a revote. *Id.* The Sixth Circuit stated that if the school was bias against Patterson, "why. . . give Patterson another shot?" *Id.* As applied here, after the first vote, Powe was still eligible to be nominated, run, and attempt to win a majority vote. [DE 33-1 at 262]. Yet she chose not to do so. [*Id.*]. The purpose of Louisville's revote was to "follow[] the right procedures" and be in accordance with Louisville's by-laws and Redbook, not out of bias or animus. *Patterson,* 155 F.4th at 647.

And critically, Powe provides no evidence suggesting otherwise. Powe solely alleges that Baldwin tainted the vote, but fails to provide any genuine evidence to support that claim. *Midwest Media Prop., L.L.C.* 503 F.3d at 469 (stating that the nonmovant must demonstrate with concrete evidence that facts are in dispute). Further, evidence of one member's animus in a vote does not demonstrate animus of the entire group. *Seoane-Vazquez v. Ohio State Univ.,* 577 F. App'x 418, 430 (affirming summary judgment for Ohio State because plaintiff "cannot point to evidence—as opposed to speculation—suggesting that these faculty members were biased" based upon a singular member's animus). Rather, to establish discrimination by a vote, a plaintiff must typically demonstrate that most members, if not all, held the same racial animus. *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 623 (E.D.N.Y. 2020) (holding it insufficient to show one

15

person had discriminatory motive where others in the department also voted to terminate); *Garcia v. City of Grantville*, 2021 WL 2548701, at \*2 (N.D. Ga. Jan. 6, 2021) ("establishing a discriminatory policy by the vote of multiple members requires *all voting members* to have shared racial animus") (emphasis added); *DeSanzo v. AHS Southcrest Hosp.*, *LLC*, 2020 WL 1105104, \*7 (N.D. Okla. Mar. 6, 2020) (same). This remains true even if an individual's comments were inappropriate. *See Seoane-Vazquez,* 577 F. App'x at 430. And although Powe alleges that Baldwin "openly espoused his discriminatory animus regarding Dr. Powe" that is insufficient. [DE 39 at 379-80]. Powe critically fails to demonstrate that these comments "altered the vote." *Seoane-Vazquez,* 577 F. App'x at 430. Nor can Powe demonstrate that any voting member changed their mind since the initial vote. [*Id.*]. In fact, after Baldwin's resignation, Powe stated that the only difference between her August 2022 and November 2022 "acceptable" votes, from 12 down to 7, were the five term faculty members who could no longer participate in the revote. [DE 33-1 at 272].

Thus, because Louisville "only changed course" to follow its binding by-laws and Redbook, Powe cannot demonstrate pre-text. *Kubik,* 221 F. Supp. 3d at 912 (rejecting a race discrimination claim on the theory that Kubik "believes that the Journal Department and CMU did not properly interpret and apply the CBA and Journalism Department by-laws"). For these reasons, Louisville's motion for summary judgment on Powe's race discrimination claim is **GRANTED**.

C. Retaliation Claims

Powe also brings a claim for retaliation against Louisville under the KCRA. [DE 21 at 175]. Her argument is two-fold: (1) Louisville retaliated for failing to implement the findings of the grievance committee, and (2) after Powe filed the Charge, Louisville retaliated by demoting Powe to a lower-level class. [*Id.*]. Both of these allegedly protected activities were known to

16

Louisville. [*Id.*]. Louisville argues that "[n]o evidence supports the contention that she suffered an adverse action causally linked to her alleged protected activity." [DE 33 at 236].

Title VII prohibits employers from discriminating against an employee because the employee has engaged in conduct protected by the act. *Laster*, 746 F.3d at 729 (citing 42 U.S.C. § 2000e-3(a)). The KCRA similarly makes it unlawful "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." KY. REV. STAT. ANN. § 344.280(1).

Similar to discrimination claims, retaliation claims under the KCRA are evaluated under the same standard as Title VII. *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)); *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 801–02 (Ky. 2004). To demonstrate a *prima facie* case of retaliation, a plaintiff must show that: "(1) the plaintiff engaged in protected activity; (2) that the exercise of [her] civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Wilson v. Bosse*, 2020 WL 7295207, *4 (Ky. Ct. App. Dec. 11, 2020) (citing *Ky Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. App. 1991)); *Asbury Univ. v. Powell*, 486 S.W.3d 246, 254 (Ky. 2016); *see also, Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). The last element requires the plaintiff to demonstrate "but-for" causation. *Beard v. AAA of Michigan*, 593 F. App'x 447, 551 (6th Cir. 2014). "But for" causation exists when the unlawful retaliation would not have occurred in the absence of the alleged action. *Id.* Still, "[t]he plaintiff's burden at the *prima facie* stage is minimal, requiring merely that the plaintiff establish 'that the protected activity and the adverse

17

action were not wholly unrelated.'" *Taylor v. Bd. of Educ. of Memphis City Schs.,* 240 F. App'x 717, 721 (6th Cir. 2007) (citing *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997)). As discussed above, if Powe demonstrates a *prima facie* case, the burden shifts to Louisville to demonstrate a legitimate non-retaliatory reason for Powe's demotion. *McDonnell Douglas Corp.*, 411 U.S. at 803. Once Louisville does so, the burden shifts back to Powe to demonstrate that Louisville's reason was pretextual. *Hamilton.,* 556 F.3d at 435.

Moreover, as with discrimination claims, KCRA retaliation claims can be established either through direct evidence of retaliation or through circumstantial evidence that would support an inference of retaliation. *Laster*, 746 F.3d at 730. A plaintiff's burden of establishing an adverse employment action is "less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 595-96 (6th Cir. 2007) (quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67–71 (2006)). And for purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found. . . materially adverse," such that "'it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Bender v. Gen. Dynamics Land Sys., Inc.*, 2020 WL 4366049, at *7 (E.D. Mich. July 30, 2020) (quoting *Laster*, 746 F.3d at 727). This is a "relatively low bar." *Michael,* 496 F.3d at 596.

As with her race discrimination claim, Powe does not allege any direct evidence of retaliation. Instead, Powe focuses on circumstantial evidence under the *McDonell Douglas* burden shifting framework.

Louisville alleges that Powe fails to establish a *prima facie* case because she did not suffer an adverse employment action, and even if she did, there was not a causal connection between the protect activity and the adverse employment action. [DE 33 at 240]. Louisville asserts that "Powe

18

failed to prove that she suffered an adverse employment action as a result of filing her faculty grievance with the University or her EEOC Charge. Accordingly, the University is entitled to summary judgment on Powe's KCRA retaliation claim." [*Id.*].

### i.    *Prima Facie* Case

Louisville argues that Powe cannot establish prongs three and four of her *prima facie* case. Louisville states that Touron "declining to adopt the recommendation of the Grievance Panel. . . is not a proper subject of a retaliation theory." [DE 33 at 237]. Louisville also states that Powe's allegation that her "course reassignment was in retaliation for the faculty grievance or EEOC Charge similarly falls flat." [*Id.* at 239]. In response, Powe argues that "taken together, these acts can meet the adverse employment action standard." [DE 39 at 384-85].

Powe "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster,* 746 F.3d at 731 (quoting *Burlington N.,* 548 U.S. at 68). And in "analyzing the significance of any given act of retaliation, 'context matters.'" *Id.* That is, each event is not taken in isolation. *See Bender,* 2020 WL 4366049, at *7 (holding that "[d]efendants' repeated alleged refusal to address Plaintiff's complaints about discrimination at the company, could plausibly have dissuaded her from continuing to engage in protected conduct and could well dissuade any reasonable worker from pursuing a discrimination claim.")

Louisville contends that "teaching a different class" is the "*de minimis* action that cannot support a retaliation theory." [DE 33 at 239]. And that "declining to adopt the recommendation of the Grievance Panel. . . is not a proper subject of a retaliation theory."[*Id.*]. "[E]ven if a reassignment is not paired with a salary or work-hour change, it can nonetheless be considered an

adverse employment action where there is evidence that the employee received 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885–86 (6th Cir. 1996)). Here, Powe provides evidence that teaching the lower class was a "demotion." [DE 39-2 at 462-63]. Powe also provides evidence that the demotion could impact her future career opportunities. [DE 39 at 385-86]. Thus, Powe evidently saw the change of course as a "demotion." *See Spees,* 617 F.3d at 392 (finding that viewing a transfer as a "demotion" could result in a "reasonable jury" concluding an adverse employment action occurred).

Powe had been teaching Chemistry 201 for the previous decade, and was designated as the "specialized" Professor for the class. [DE 39-2 at 448]. This class was intended for pre-med students and other students with an interest in Chemistry. Now, Powe was given the "lower level Chemistry [in] Society class," which is not a "specialized class, but an elective." [DE 39 at 385]. This is a "less distinguished title" that the Sixth Circuit has stated can qualify as an "adverse employment action." *Spees,* 617 F.3d at 392. The "demotion" was also a change in "her job responsibilities." *Halfacre v. Home Depot, U.S.A., Inc.,* 221 F. App'x 424, 431-32 (6th Cir. 2007) (affirming a lower court where the court "concluded that a jury could find that assigning the plaintiff to less-desirable job duties" was an adverse employment action). Accordingly, because a jury may conclude that teaching a lower-level course may constitute an adverse employment action, that is, more than a "minor annoyance[,]" summary judgment is not appropriate. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013); *Burlington N.,* 548 U.S. at 70-71 (finding that an adverse employment action may occur even when "both the former and present duties fall within the same job description"); *Michael,* 496 F.3d at 595-96 (the burden of

20

establishing an adverse employment is "less onerous in the retaliation context" and is a relatively.

. . "low bar").

Next, Louisville states that Powe did not suffer an adverse action "causally linked" to her protected activity. [DE 33 at 236]. "A causal link may be shown through knowledge combined with closeness in time that creates an inference of causation." *Johnson*, 215 F.3d at 582. To meet this requirement, Powe must "produce sufficient evidence for a reviewing court to infer that [Louisville] would not have taken the adverse action" had Powe not filed a grievance or the Charge. *Id.* As the Sixth Circuit has explained,

> [w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

The Sixth Circuit has stated that "temporal proximity alone can, in certain circumstances, suffice to show a causal connection in a retaliation case." *Dye v. Office of the Racing Comm'n,* 702 F.3d 286, 305-06 (6th Cir. 2012). And specifically, "[a] lapse of two months. . . is sufficient to show a causal connection, and the district court erred in holding otherwise." *Id*; *see also Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir. 2007) (holding that three months is sufficient because "a plaintiff's burden in establishing a prima facie case is not intended to be an onerous one"). As relevant: (1) Powe filed her faculty grievance in February 2023; (2) the Panel held a hearing, and issued its report, in August 2023; (3) Powe filed the Charge in September 2023; (4) Touron rejected the Panel's findings in September or November 2023; (5) a student complaint was filed in

December 2023 and the committee found in Powe's favor; and (6) Powe was demoted in February 2024. [DE 39 at 369-70].

Additionally, Louisville contends that Touron was unaware of the Charge, and thus, finding retaliation because of Touron's rejection of the Panel's recommendation would be inappropriate.[7] To demonstrate this point, Louisville states that when asked about the Charge, Touron responded "I don't recall seeing it, but I mean, I'm not sure." [DE 40 at 729]. And also, "I don't recall having seen that. I mean, that doesn't guarantee that it wasn't sent to me at any point." [*Id.*]. Powe disputes this and states that "Powe's Charge would have mentioned the Dean's failure to fully implement the grievance committee's recommendations." [DE 39 at 367]. Further, Touron's letter is undated and she admitted that she was unsure of whether it was issued in September or November. [DE 39-12, undated Touron response, at 605]. This potentially overlaps with the date of the Charge on September 20, 2023. [DE 39 at 366]. Thus, viewing the facts in the light most favorable to Powe, summary judgment would not be appropriate as there is a dispute on a material fact, and Louisville has failed to meet its burden. *Celotex Corp.*, 477 U.S. at 323.

Powe also provides further evidence to demonstrate that a causal connection existed. *See EEOC*, 104 F.3d at 861 (holding that the "burden is minimal" to demonstrate a causal connection). After the Panel completed an investigation into Powe's Grievance, the Panel unequivocally sided with Powe. [DE 39-2 at 472]. Then, before Touron implemented the Panel's recommendation, Powe filed the Charge. As the timeline is disputed, and making all inferences in favor of Powe, a

---

[7] Notably, this fact was not raised in Louisville's motion for summary judgment, but only on its reply. Therefore, the Court need not address it at all. *Barany-Snyder, v. Weiner,* 539 F.3d 327, 331-32 (6th Cir. 2008) (affirming a district court's decision not to address arguments raised for the first time in a reply brief). "District Courts in this Circuit have repeatedly held that arguments and issues raised for the first time in a reply brief are not properly before the Court." *Al Maqablh v. Heinz,* 2018 WL 4186420, *3 (W.D. Ky. Aug. 31, 2018). The Sixth Circuit may even consider these arguments waived entirely. *See Blandford v. Exxon Mobile Corp.,* 483 F. App'x 153, 161 (6th Cir. 2012) (citing *Sanborn v. Parker,* 629 F.3d 554, 579 (6th Cir. 2010)).

reasonable jury could find Touron did not release her statement regarding the Panel's recommendations until *after* Powe filed her Charge, within a two month span. [DE 39-12 at 605]. A reasonable jury could find that the protected activity and the "adverse action were not wholly unrelated." *Taylor,* 240 F. App'x at 721; *see, cf., Allen v. Univ. of Louisville Physicians, Inc.,* 2024 WL 629848, at *6 (W.D. Ky. Feb. 14, 2024) (holding that no causal connection existed when Louisville rejected a panel's recommendations because the plaintiff's grievance claim lacked merit). This is coupled with the facts that only a few months later, the SCC rejected the student's claim and sided with Powe, Touron rejected and disciplined Powe, and then Touron demoted Powe to a lower-level class. [DE 39-2 at 462-63 ("I had been demoted. . . because of Dean Touron")]. Louisville contends that Powe "agreed" to the demotion, but Powe disputes this fact and states that she solely accepted the job because Touron threatened her with "probation." [DE 39-2 at 473]. Powe had been the "specialized" professor and taught Chemistry 201 for well over a decade without issue. [*Id.* at 448]. It was allegedly only after Powe engaged in a protected activity that she was demoted. Although "suspicious timing" alone may not support a claim, "suspicious timing" can be "strong" in aiding a claim when "accompanied by some other, independent evidence." *Bell v. Prefix, Inc.,* 321 F. App'x 423, 431 (6th Cir. 2009).

Based on the above, a reasonable jury could conclude that the protected activity and the "adverse action were not wholly unrelated." *Taylor,* 240 F. App'x at 721. Accordingly, Powe has put forward enough evidence to meet her "minimal" *prima facie* burden of a causal connection. *EEOC,* 104 F.3d at 861; *Mickey,* 516 F.3d at 525.

As stated, Louisville does not contest prongs one and two of Powe's retaliation claim. Because Powe is able to demonstrate that she: (1) suffered an adverse employment action and (2) a causal connection existed, Powe has met her initial *prima facie* burden at this stage in the

23

framework. *Brooks,* 132 S.W.3d at 803. Thus, the burden turns to Louisville. *Hamilton.,* 556 F.3d at 435.

### ii.      Nondiscriminatory Justification

Powe has met *prima facie* burden. As a non-discriminatory justification, Louisville first states that Touron "set forth the reasons for her rejection of the recommendation." [DE 33 at 238-39]. Touron stated:

> I respectfully do not agree that Powe should be appointed as department chair or should be reviewed for tenure. Although it may be the case that term faculty have been appointed as department chair in other schools or colleges at the University of Louisville, it would be a highly unusual practice in a College of Arts & Sciences, particularly at the R1 level. Review for tenure must conform to university policy and practices.

[DE 33-4 at 308].

Second, Louisville asserts that Powe was subjected to a teaching reassignment because of a Powe's "performance in teaching." [DE 33 at 238-39]. At this stage, the burden is only one of "production, not persuasion." *Chattman,* 686 F.3d at 349. Following one's own policy is sufficient as a non-discriminatory justification. *Id.* Louisville has produced a non-discriminatory justification. The burden shifts back to Powe.

### iii.      Pretext

Because Louisville has articulated a nondiscriminatory justification for its action, the burden shifts back to Powe to show by a preponderance of the evidence that Louisville's justification is pretext for unlawful retaliation. *Hicks*, 509 U.S. at 515. Powe may establish pretext by showing that the proffered reason "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citing *Manzer,* 29 F.3d at 1084).

As stated above, under the first method, which "is essentially an attack on the credibility of the employer's proffered reason," the plaintiff must show that "the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual." *Joostberns*, 166 F. App'x at 791. "Where the employer can demonstrate an honest belief in its proffered reason, however, the inference of pretext is not warranted." *Id.* Under this "honest belief" rule, an employer's proffered reason is considered honestly held when the employer can establish that it "reasonabl[y] reli[ed] on the particularized facts that were before it at the time the decision was made." *Smith*, 155 F.3d at 807. The second method is also an attack on the credibility of the proffered reason, but unlike the first method, "admits that the employer's proffered reason has basis in fact but denies that it created sufficient cause for the adverse employment action." *Joostberns*, 166 F. App'x at 791. The third method "admits that the reason could motivate the employer but argues that the illegal reason is more likely than the proffered reason to have motivated the employer." *Id.* "[R]egardless of which rebuttal method a plaintiff uses, '[s]he always bears the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him.'" *Gunn*, 632 F. App'x at 844 (quoting *Seeger*, 681 F.3d at 285). Summary judgment is only proper on pretext ground if "based on the evidence presented, a jury could not reasonably doubt the employer's explanation." *Chen,* 580 F.3d at 400 n.4.

Powe is able to demonstrate pretext under either the first or third prong. Powe alleges that Touron's reasoning for rejecting the Panel's recommendation ignored Powe's research experience during her time at Louisville. [DE 39 at 387]. Powe was the Principal Investigator on a federally-funded research program and oversaw all aspects of the project. [DE 39-28, annual review of Powe, at 715]. Term Faculty have served as Department Chairs at other R1 level colleges, such as the

25

Medical School. [DE 39-2 at 433; DE 39-19, grievance hearing transcript, at 659 ("in the School of Medicine there's plenty of examples of term faculty who've led departments.")]. And lastly, Touron ignored Powe's specific visions for the Chemistry Department, that directly addressed Touron's concerns. [DE 39-2 at 433]. These visions included an improved dedication to research and innovation. [*Id.*]. And although this testimony is directly from Powe, "courts have held that a plaintiff's testimony. . . can be sufficient to create a genuine issue of material fact as to pretext." *Key v. City of Detroit,* 732 F. Supp. 3d 721, 738 (E.D. Mich. 2024). As a result, a reasonable jury could find that Touron's reasoning had "no basis in fact" because Powe's history and research background contradict Louisville's alleged nondiscriminatory reasons. In other words, a reasonable jury could find that Louisville "did not actually have cause to take adverse action against the employee based on its proffered reason." *Joostberns,* 166 F. App'x at 791; *Wyatt v. Nissan N. Am., Inc.,* 999 F.3d 400, 422 (6th Cir. 2021) (stating that summary judgment is inappropriate because "the suspicious timing coupled with inconsistent" evidence "make it such that a trier-of-fact would need to weigh the evidence"); *Moody v. MidMichigan Med. Ctr. Midland,* 704 F. Supp. 3d 772, 784 (E.D. Mich. 2023) (holding that summary judgment is inappropriate because there are "questions of fact" as to whether Defendant's nonretaliatory reason was "based in fact"); *Thornhill v. WillScot Mobile Mini Holdings Corp.,* 764 F. Supp. 3d 670, 689 (M.D. Tenn. 2025) (holding that employer's reasoning was "insufficient" and thus summary judgment was not appropriate).

Powe also provides evidence that Louisville's second reason, her "performance in teaching," is pretextual. Powe was not eligible to be put on probation because she had received a "proficient or highly proficient through the whole time" of her tenure as reviewed by other faculty members. [DE 39-2 at 473]. And although Powe may have received a complaint about her teaching

26

from a student, Powe provides evidence that she was not underperforming as an instructor as reviewed by her peers, but instead her alleged underperformance was solely because of isolated student evaluations. [DE 39-1, Dep. of Grapperhaus, at 413]. In further support of her performance as an instructor, Powe provides numerous positive letters of recommendation demonstrating her teaching proficiency from both professors *and* students. [DE 39-27, evaluations of Powe, at 708-12]. Notably, Louisville's annual review of Powe stated that Powe's performance "specifically contradicted some of the common complaints leveled against her in the student satisfaction surveys." [DE 39-28, Chemistry Department annual review of Powe, at 715.]. Because of the positive performance reviews and letters of recommendation in direct contradiction to Louisville's assertions, "the Court may infer discrimination." *McIntosh v. Stanley-Bostitch, Inc.,* 82 F. Supp. 2d 775, 787 (N.D. Ohio 2000); *see also, Thornhill,* 764 F. Supp. 3d at 689. Viewing in the "light most favorable to the Plaintiff. . . Defendant's reasons had no basis in fact and that [Powe's] performance problems were insufficient to motivate [her] demotion." *Id; Brown v. Kelsey-Hayes Co.,* 814 F. App'x 72, 90 (6th Cir. 2020) (Clay J., dissenting) ("the main issue" on summary judgment regarding pretext is "whether a jury 'could reasonably reject' Defendants' explanation") (quoting *Chen,* 580 F.3d at 400).

Powe has demonstrated that a reasonably jury could find that Louisville did not have an "honest belief" in its nondiscriminatory reasons. *Babb v. Maryville Anesthesiologists P.C.,* 942 F.3d 308, 320 (6th Cir. 2019) (holding that to survive summary judgment an employee does not have to "prove" pretext, but only needs to create a "*genuine issue* as to whether the rationale is pretextual") (quoting *Whitfield v. Tenn.*, 639 F.3d 253, 260 (6th Cir. 2011) (emphasis in original)). Accordingly, Louisville's motion for summary judgment on Powe's retaliation claim is **DENIED**.

### III.    CONCLUSION

For the reasons explained, and the Court being otherwise sufficiently advised, it is **ORDERED**:

1.  Powe's unopposed motion for leave to file excess pages [DE 38] is **GRANTED**.

2.  Louisville's motion for summary judgment on Powe's KCRA race discrimination claim is **GRANTED**.

3.  Louisville's motion for summary judgment on Powe's KCRA retaliation claim is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

June 29, 2026

28